# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| ERIC WALTON, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES STEEL CORPORATION, )<br>    Defendant. ) | CAUSE NO.: 2:15-CV-74 |

## OPINION AND ORDER

This matter is before the Court on a Motion of Defendant, United States Steel Corporation, for Summary Judgment [DE 19], filed on January 25, 2016. Plaintiff Eric Walton, pro se, has not filed a response, and the time to do so has passed. For the following reasons, the Court grants Defendant's Motion for Summary Judgment.

## PROCEDURAL BACKGROUND

On April 29, 2014, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that Defendant impermissibly terminated Plaintiff's employment because of Plaintiff's disability. The EEOC issued a Dismissal and Notice of Rights on December 11, 2014, and Plaintiff initiated the instant cause of action by filing a Complaint against Defendant on February 27, 2015. Defendant filed an Answer on May 21, 2015, and deposed Plaintiff on November 19, 2015. Defendant then filed the instant Motion for Summary Judgment on January 25, 2016, and served Plaintiff with a Notice of Summary Judgment Motion as required by Northern District of Indiana Local Rule 56-1(f).

Plaintiff alleges that Defendant made false statements about Plaintiff and gave a negative reference for Plaintiff to ArcelorMittal, Plaintiff's potential employer. Plaintiff brings suit against

Defendant on three legal theories: defamation, violation of the Americans with Disabilities Act (ADA), and violation of Title VII of the Civil Rights Act.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure require that a motion for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Summary judgment is appropriate when no material fact is disputed and the moving parties are entitled to judgment as a matter of law, meaning that no reasonable jury could find for the other party based on the evidence in the record." *Carman v. Tinkes*, 762 F.3d 565, 566 (7th Cir. 2014).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56 (a), (c). The moving party may discharge its initial responsibility by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to

support the nonmoving party's case." *Celotex*, 477 U.S. at 325; *see also Spierer v. Rossman*, 798 F.3d 502, 508 (7th Cir. 2015). When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Spierer*, 798 F.3d at 507-08; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168-69 (7th Cir. 2013).

"Once the moving party puts forth evidence showing the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(c)(1), (e); *Flint v. City of Belvidere*, 791 F.3d 764, 769 (7th Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e) (1986)). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 248-50.

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *McDowell v. Vill. of Lansing*, 763 F.3d 762, 764, 765 (7th Cir. 2014); *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009). A court's role is not to

3

evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

## MATERIAL FACTS

Plaintiff worked for Defendant from February 2006 until his termination in February 2009. Plaintiff suffered workplace injuries on December 12, 2007, and February 21, 2008. In June 2008, Plaintiff filed claims for workers compensation in relation to these injuries. Later, Plaintiff was suspended and the suspension was converted to termination. Plaintiff's end date of employment with Defendant was February 27, 2009. On April 20, 2009, Plaintiff filed a Charge of Discrimination with the EEOC, alleging he was discharged due to his disability. The EEOC issued Plaintiff a Notice of Right to Sue on February 22, 2010. On May 6, 2010, Plaintiff filed a civil claim *pro se* against Defendant (Case No. 2:10-CV-188) alleging his discharge was in retaliation for filing (1) a grievance with the union, (2) a charge of discrimination with the EEOC, (3) a worker's compensation claim, and (4) his complaint in case 2:10-CV-188. That action was resolved in Defendant's favor on December 21, 2012, in an order on a motion for summary judgment issued by Magistrate Judge Andrew P. Rodovich.

Plaintiff represents that, on or around March 11, 2013, he applied for a job at ArcelorMittal and that, on or around June 6, 2013, he identified Defendant as a job reference. On July 29, 2013, ArcelorMittal denied Plaintiff's application, indicating that:

> We have completed our most recent round of selection reviews . . . .
> We have had many candidates submit applications, making our selection process very difficult. At this time, however, we are unable to consider you further for employment . . . .
> . . . .

4

> Your application and the application evaluation results will be retained for one calendar year. If after that time we are accepting applications and you remain interested in employment with ArcelorMittal, please feel free to reapply."

(Def.'s Mot. Summ. J. Ex. 9, at 100, ECF No. 21-9).

Plaintiff represents that, in December 2013 or January 2014, Maurice Johnson, who is Plaintiff's uncle and an ArcelorMittal employee, told Plaintiff that Maugerite Zanders Snyder, a human resources supervisor at ArcelorMittal, told Johnson that Defendant gave a "bad reference" for Plaintiff. No deposition testimony or affidavit from either person has been submitted to the Court. Additionally, Plaintiff states that he makes a "logical inference" that Defendant gave a bad reference for him because he has been denied numerous job opportunities. Plaintiff stated in his deposition that he has no personal knowledge of (1) the reason he was not hired at ArcelorMittal, (2) the person who made the decision to decline Plaintiff's application, or (3) the contents of the alleged referral.

Defendant included in its Motion for Summary Judgment the affidavits of Kathleen Grommet, Defendant's coordinator of human resource services, and Remitha Norman, a senior operations manager for First Advantage. Grommet testifies in her affidavit that, as of December 2012, Defendant does not directly provide prospective employers of former employees with employment information. Instead, Defendant uses VerifyAdvantage for employment verification purposes. VerifyAdvantage only provides objective information such as dates of employment, wage information, job title, and work location. Norman testifies in her affidavit that First Advantage operates VerifyAdvantage and that VerifyAdvantage did not receive any employment inquiries about Plaintiff from ArcelorMittal or any other prospective employer in 2013.

**ANALYSIS**

Defendant argues summary judgment is appropriate because (1) Plaintiff failed to exhaust administrative remedies as to the Title VII claims; (2) Plaintiff's ADA claims are untimely, barred by res judicata, and are not supported by evidence; and (3) Plaintiff has not presented evidence of a defamatory communication. The Court addresses each argument in turn.

**A. Title VII Claims**

Plaintiff alleges that Defendant retaliated against Plaintiff in violation of Title VII. Title VII prohibits discrimination in employment: "It shall be an unlawful employment practice for an employer . . . to discharge any individual because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In order to file a Title VII claim, a plaintiff must first file a charge of employment discrimination with the EEOC that encompasses the conduct complained of and must receive a statutory notice of right to sue from the EEOC. 42 U.S.C. § 2000e-5(e), (f); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974); *Conner v. Illinois Dept. of Nat. Res.*, 413 F.3d 675, 680 (7th. Cir. 2005).

As a general rule, a Title VII plaintiff cannot bring a claim in a lawsuit that was not encompassed in the EEOC charge, but such claims may be brought "if they are like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations. *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256-57 (7th Cir. 2011) (alteration in original) (internal quotation marks omitted) (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (en banc)). "The complaint filed in the district court and the charge filed with the EEOC must, at a minimum, describe the same circumstances and participants." *Conner*, 413 F.3d at 680 (citing *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202-03 (7th Cir. 1996)).

The EEOC filing requirement serves the dual purpose of affording the EEOC and the employer an opportunity to settle disputes through the EEOC process and of giving the employer some warning of the alleged conduct at issue. *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 831 (7th Cir. 2015). Because EEOC charges are often completed by laypersons, the scope of an EEOC charge is read liberally, and a Title VII plaintiff need not allege each and every fact in the charge that, in the aggregate, forms the basis of the claims in the complaint. *Id.*

Plaintiff's second EEOC Charge of Discrimination and his Title VII claims implicate the same individuals and describe the same conduct. Both involve Plaintiff, Defendant, and ArcelorMittal, and both allege that ArcelorMittal did not hire Plaintiff because Defendant had "red flagged" Plaintiff. However, Plaintiff's Title VII claims cannot reasonably be expected to grow out of the allegations in Plaintiff's second EEOC Charge. The Charge never suggests discrimination based on race, color, sex, religion, or national origin. Rather, Plaintiff alleges in the Charge that he was involved in two work-related injuries, was subsequently terminated due to his medical condition or disability, and was thereafter "red flagged" by Defendant in retaliation. Plaintiff alleged that he was "discriminated against due to [his] disability/medical condition, and retaliated against, in violation of the [ADA]." As such, Defendant did not have reasonable notice of a potential Title VII claim.

Even if the Title VII claim were encompassed in the EEOC Charge, it would nonetheless fail because Plaintiff has not offered any evidence that Defendant's alleged conduct was because of Plaintiff's race, color, religion, sex, or national origin.

Because Plaintiff's Title VII claim cannot reasonably be expected to grow out of the Plaintiff's second EEOC Charge, and because Plaintiff has not offered evidence that shows Defendant's alleged actions were made because of Plaintiff's membership in a protected class, the Court grants summary judgment in favor of Defendant as to Plaintiff's Title VII claims.

**B. ADA Claims**

Defendant contends that the Court should grant summary judgment in favor of Defendant on Plaintiff's claims of violations of the ADA. Defendant argues that most of the claim is untimely, some claims are barred by res judicata, and Plaintiff has presented no evidence to support the claim. The Court will address the timeliness and substantive arguments below. The Court need not address the res judicata argument because the claims affected by that argument are also untimely.

*1. Timeliness*

Plaintiff alleges that he suffered damages due to disability discrimination and retaliation under the ADA. In support of this claim, Plaintiff alleges discriminatory acts by Defendant as early as June 10, 2008. In order to file a complaint under Title VII and the ADA, a plaintiff must first file a timely charge of employment discrimination with the EEOC. 42 U.S.C. § 12117(a) (incorporating the filing requirements found in 42 U.S.C. § 2000e-5(e) as the filing requirements under the ADA). In a deferral state such as Indiana, a charge is timely if filed "within 300 days after the unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *see also DeLon v. Eli Lilly & Co.*, 990 F. Supp. 2d 865, 871 (S.D. Ind. 2013).

Plaintiff filed the EEOC charge that is a precursor to the instant lawsuit on April 29, 2014. Consequently, Plaintiff's claims are limited to those that occurred on or after July 3, 2013, which is 300 days before April 29, 2014. Plaintiff alleges in his Complaint that he was discriminated

8

against from June 10, 2008, to February 27, 2009. Plaintiff also alludes to his loss of insurance coverage due to his termination and represents that he remained uninsured until February 1, 2012. Claims based on these pre-2013 events are thus untimely.

Because Plaintiff's claims are limited to occurrences that took place after July 3, 2013, the Court grants summary judgment for Defendant as to Plaintiff's claims of discrimination and retaliation under the ADA that occurred before July 3, 2013, on the basis that these claims are untimely.

Plaintiff also alleges that he authorized ArcelorMittal to contact Defendant as a job reference for a job Plaintiff applied to at ArecelorMittal on or around March 11, 2013. Plaintiff's application was denied on July 29, 2013. It is possible that the alleged "bad reference" occurred after July 3, 2013, so summary judgment in favor of Defendant based on untimeliness is inappropriate for this claim. For this claim, the Court will address Defendant's argument that summary judgment should be granted in its favor due to Plaintiff's lack of evidence to support his allegations.

2.     *Lack of Evidence*

In order to state a *prima facie* claim of retaliation under the ADA, a plaintiff must show that he was engaged in statutorily protected activity, that he suffered adverse employment action, and that there is a causal connection between the protected activity and the adverse action. *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1117 (7th Cir. 2001). Plaintiff alleges that he engaged in protected activity when he filed his worker's compensation claims, EEOC Charges, and 2009 complaint and that Defendant took adverse action against Plaintiff by giving Plaintiff a bad job reference.

Summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence [he] has that would convince a trier of fact to accept [his] version of the events." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (internal quotation marks and citations omitted). Plaintiff offers no admissible evidence supporting his allegation that Defendant took adverse action against him or that a causal connection exists between his protected activity and the alleged retaliation. Plaintiff admitted at his deposition that he has no personal knowledge of (1) the reason he was not hired at ArcelorMittal, (2) the person who made the decision to decline Plaintiff's application, or (3) the contents of the alleged defamatory referral. Plaintiff simply relies on "logical inferences" and inadmissible hearsay—Johnson's report of his conversation with Sanders—in alleging that Defendant retaliated against him. Defendant submitted the affidavits of Grommet and Norman, which provide evidence that Defendant gave no reference, whether positive or negative, to ArcelorMittal regarding Plaintiff. Because Plaintiff has not offered evidence of an adverse action taken against him or of a causal connection between the alleged adverse action and Plaintiff's protected activity, the Court grants summary judgment for Defendant as to claims of retaliation in violation of the ADA.

### C. Defamation

Plaintiff claims that he was defamed by Defendant. Indiana law applies to this claim. "To establish a claim of defamation, a plaintiff must prove the existence of a communication with defamatory imputation, malice, publication, and damages." *Dugan v. Mittal Steel USA Inc.*, 929 N.E.2d 184 (Ind. 2010) (internal quotation marks omitted) (quoting *Trail v. Boys & Girls Clubs of N.W. Ind.*, 845 N.E. 2d 130, 136 (Ind. 2006).

Defendant offers undisputed evidence that it does not personally provide job references for former employees and only provides objective employment and income information by way of a third-party employment verification service. Further, Defendant presented evidence that neither ArcelorMittal nor any other prospective employer made inquires to the verification service regarding Plaintiff's employment with Defendant in 2013. Plaintiff has neither contested this evidence nor presented evidence of any communication between Defendant and ArcelorMittal. That is, the undisputed evidence indicates that no job reference was requested and no job reference was given.

Plaintiff's allegation that, based on "logical inferences," Defendant must have given a negative reference to ArcelorMittal, without evidence, is not sufficient to establish a communication with defamatory imputation. Additionally, even if Plaintiff could show that Defendant made a communication and that this communication was defamatory, Plaintiff has offered no evidence that the alleged communication was made with malice. Accordingly, the Court concludes that there is no genuine issue for trial, and grants Defendant's Motion for Summary Judgment as to Plaintiff's defamation claim.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the Motion of Defendant, United States Steel Corporation, for Summary Judgment [DE 19]. The Court **DIRECTS** the Clerk of Court to enter judgment in favor of Defendant United States Steel Corporation and against Plaintiff Eric Walton.

So ORDERED this 25th day of May, 2016.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: Eric Walton, pro se